UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DRAKE, et al., | ) | CASE NO.  5:11CV1898 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| DEREK RICHERSON, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of defendant Laborers' Local Union No. 894 ("Local 894") for summary judgment (Doc. No. 34), plaintiffs, Michael and Cynthia Drake, have filed a response (Doc. No. 41), and Local 894 has replied (Doc. No. 42). For the reasons that follow, Local 894's motion is granted, in part, and this matter is remanded to state court.

**I.     BACKGROUND**

This case arises out of two encounters between plaintiff Michael Drake ("Drake") and defendant Derek Richerson ("Richerson").[1] The first event occurred on April 3, 2009, when Drake was working at a construction site as a non-union employee of Structural Building Systems (formerly known as "C.T. Taylor"). (Doc. No. 39, Deposition of Michael Drake at 778-79, 789, 798.) Richerson who was, at the time, Vice President and one of several field representatives of the local union, was dispatched to the construction site purportedly to inquire about opportunities for union masons on the

---

[1] Defendant Dereck Richerson was incorrectly sued as "Derek" Richerson. (*See* Doc. No. 5-2 at 302.).

construction project. (Doc. No. 35, Deposition of Dereck Richerson at 598, 607.) Plaintiffs maintain that Richerson's true reason for the visit was to pressure non-union workers into joining the local union.

Once at the site, Richerson approached Drake, who was operating a piece of heavy machinery. (Doc. No. 39 at 799-801.) Richerson asked plaintiff if he had joined the union, to which Drake responded that he had nothing to do with the union and advised Richerson that he needed to get back to work. (*Id*. at 801-02.) However, Richerson blocked Drake's path, grabbed onto his machine, and fired more questions at him. (*Id*. at 802-03.) Drake eventually abandoned his machine and went into a school building, located at the site, looking for his supervisor. Richerson followed and resumed his interrogation. Drake became "hot" and frustrated with Richerson's pursuit and asked him to leave. (*Id*. at 804-05.) Richerson ultimately withdrew from the building. (*Id*. at 805.)

Drake eventually located his supervisor and advised him that a union representative was on site and was asking questions. (*Id*. at 806.) When Drake returned to his machine, he observed Richerson speaking with a mason. (*Id*. at 816.) Drake noticed Richerson pointing and gesturing in his direction. (*Id*.) While Drake later learned that Richerson had made threats of violence against him, Richerson left the construction site peacefully that day and without any further interaction with Drake. (*Id*. at 821, 825.)

The second encounter between these two men occurred on January 9, 2010 at a convenience store in Akron, Ohio. Richerson had visited the store for the purpose of purchasing groceries and a lottery ticket. (Doc. No. 35 at 619.) He returned to his car, and scratched off the concealed code to reveal that he was an instant winner. Meanwhile,

Drake entered the store. He, too, was planning to purchase some lottery tickets, and had promised the store's proprietor that he would perform some freelance construction work at the store. (Doc. No. 39 at 833-34.)

Richerson decided to return to the store to claim his prize. (Doc. No. 35 at 621.) When he observed Drake standing near the counter, Richerson approached Drake inquiring, "Hey, Bug, remember me?"[2] (Doc. No. 39 at 841.) Drake thought Richerson looked familiar, and held out a hand as if to shake Richerson's. Instead of returning the gesture, Richerson began to strike Drake repeatedly with his fists and kick him. (*Id*. at 841-43.) The beating lasted for several minutes, with Drake eventually falling to the ground and Richerson sitting on him, during which Richerson patted his side, revealing a gun holster and cautioned Drake not to follow him out of the store. (*Id*. at 843-44.) After Richerson left the scene, the store owner phoned the police. Drake sustained serious injuries to his ribs, spleen, and face during the attack, and was unable to return to work for more than six weeks. (*Id*. at 860-61, 885.) Richerson was arrested and charged in connection with the assault. (Doc. No. 35 at 623.)

According to plaintiffs, Richerson was never disciplined by the union. While plaintiffs acknowledge that Richerson was not permitted to return to the work site where Drake was employed, they note that Richerson remained in his position with the union, and that he was permitted to continue his campaign for local union president. Richerson was ultimately successful in his election bid. (Doc. No. 35 at 629.)

---

[2] Drake testified that his nickname is "Bug." (Doc. No. 39 at 772.)

At some point after the election, Richerson was tried in the Summit County Court of Common Pleas, and was convicted of felonious assault, under Ohio Rev. Code § 2903.11(A)(1), and a firearm specification, under Ohio Rev. Code § 2941.145. He was sentenced to two years imprisonment for the assault, which was ordered to run consecutively with a mandatory three-year sentence for the gun specification. (Doc. No. 5-5 at 374, State Appellate Brief of Richerson; Doc. No. 35 at 629-31.) Following his conviction, Local 894 terminated his employment.[3] (Doc. No. 35 at 630.)

On January 6, 2011, Drake brought suit in the Summit County Court of Common Pleas against Richerson, Local 894, and Laborers' International of North America ("the International"), raising claims of assault and conspiracy. Plaintiff Cynthia Drake also brought a derivative claim for loss of consortium. On August 9, 2011, plaintiffs amended their complaint to add claims for negligent and intentional infliction of emotional distress, negligent hiring and negligent retention, and unfair labor practice(s) ("ULP"). (Doc. No. 1-20, First Amended Complaint.) Relying exclusively on plaintiffs' new ULP claim, defendants successfully removed the action to federal court.[4] (Doc. No. 1, Notice of Removal.)

---

[3] The record reflects that, in June 2010, Local 894 suspended Richerson with pay. Local 894 presented uncontroverted evidence that, upon his suspension, Richerson was required to turn in his union car, credit card and keys. (Doc. No. 37, Deposition of William Orr at 687.) Further, Richerson resigned his position as president of the local union in December 2010 or January 2011, and he unsuccessfully petitioned Local 894 for a severance package. (*Id.* at 687, 691.) Richerson is currently still serving his prison sentence.

[4] Local 894's insurer, State Farm Casualty Company, joined in the notice of removal. State Farm had previously been granted leave to intervene in the matter. Following removal, this Court granted State Farm's motion for summary judgment as to its duty to defend Richerson. (Doc. No. 10.) Additionally, on January 14, 2013, and by agreement of the parties, the International was voluntarily dismissed. (Doc. No. 31.)

Local 894 now moves for summary judgment on all claims raised in the First Amended Complaint. In its motion, the local union argues that there is no evidence in the record that, if believed, would support union liability for the assault by Richerson. With respect to the claim of unfair labor practices, Local 894 argues that the action is time-barred, and that the claim fails on the merits because there is no evidence that it attempted to coerce Drake into joining the union. Plaintiffs, however, insist that there are genuine issues of material fact relating to the state tort claims, and that there are also factual disputes surrounding the timeliness of the ULP claim.

## II.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

The party opposing the motion may not rely merely on allegations or denials in its own pleading; rather, by affidavits or materials in the record, they must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an

essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mere conclusory allegations "are not evidence and are not adequate to oppose a motion for summary judgment." *Miller v. Aladdin Temp–Rite, LLC*, 72 F. App'x 378, 380 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

In ruling on a motion for summary judgment, the court may not take into account credibility or the weight of the evidence, nor may it draw inferences from the

6

facts. *Anderson*, 477 U.S. at 255. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* "If the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* at 248. Accordingly, for the purposes of deciding this motion, and where communicated properly under Rule 56, plaintiff's account of the facts must be accepted as true.

### III. UNFAIR LABOR PRACTICE CLAIM IS TIME-BARRED

In their amended complaint, plaintiffs allege that Local 894 "participated in unfair labor practices by encouraging, authorizing and allowing" Richerson "to attempt to physically coerce an employee," specifically Drake, "into joining the union." (*Id.* ¶ 25.) Section 10(b) of the National Labor Relations Act ("NLRA") provides in relevant part that: "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of a charge with the [National Labor Relations] Board and the service of a copy thereof upon the person against whom such charge is made[.]" 29 U.S.C. § 160(b).[5] The six-month limitations period also applies to ULP claims brought by individuals against unions and/or employers. *See generally DelCostello v. Int's Bhd. of Teamsters*, 462 U.S. 151, 169-171 (1983) (adopting the six-month limitations period provided by Section 10(b) of the NLRA for "hybrid" causes of action); *Cummings v. John Morrell & Co.*, 36 F.3d 499, 507 (6th Cir. 1994) (applying six-month statute of limitations to hybrid § 301 suit against employer and union).

---

[5] The six-month limitations period for filing an unfair labor practice complaint is "procedural, not jurisdictional, and is therefore 'subject to recognized equitable doctrines.'" *See NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945, 967 (6th Cir. 2000) (quoting *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 495 n.11 (1982)). Nonetheless, plaintiffs have not argued for an equitable tolling of the limitations period, nor is the Court aware of any facts that would give rise to such a tolling.

The parties do not dispute the application of this six-month period to the unfair labor practice claim, but disagree on when the clock began to run. Local 894 argues that Drake knew of any potential ULP claim on January 9, 2010, the date of Richerson's assault. Plaintiffs insist that only a jury can determine when Drake knew of or should have known of the unfair labor practice alleged in the amended complaint.

It is well-settled that the six-month time period "accrues from the date that the plaintiff 'discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Nida v. Plant Protection Ass'n Nat'l*, 7 F.3d 522, 525 (6th Cir. 1993) (citation omitted). "In other words, the Section 10(b) period 'begins to run at the time an [individual] receives unequivocal notice of an adverse [] action rather than the time that action becomes effective.'"[6] *Taylor Warehouse Corp. v. NLRB*, 98 F.3d 892, 899 (6th Cir. 1996) (quoting *Armco, Inc. v. NLRB*, 832 F.2d 357, 362 (6th Cir. 1987), *cert. denied*, 486 U.S. 1042 (1988)). The party against whom the ULP is lodged bears the burden of establishing that the charging party received such notice. *See Taylor*, 98 F.3d at 899.

According to plaintiffs, defendant has not offered any evidence indicating when Drake knew or should have known of the alleged unfair labor practice. (Doc. No. 41 at 959.) They further argue that the fact that the date of the physical assault is known does not, as a matter of law, serve as notice of a union connection. (*Id*.) Relying on *Taylor*, and its determination that the "date upon which the alleged violation . . .

---

[6] "While '[t]he determination of the accrual date is an objective one: the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *Garrish v. Int'l Union United Automobile, Aerospace, and Agr. Implement Workers*, 417 F.3d 590, 594 (6th Cir. 2005) (quoting *Noble v. Chrysler Motors Corp*., 32 F.3d 997, 1000 (6th Cir. 1994) (further quotation and citation omitted)).

occurred represents a factual finding[,]" plaintiffs suggest that "[a] jury will thus be entitled to hear evidence regarding whether [Drake] appreciated" the union's activities and "when, through reasonable diligence, he should have known of the transgressions." (*Id.* [citing *Taylor*, 98 F.3d at 899]).

However, Drake's own deposition testimony leaves no doubt that he knew, or should have known, of the facts supporting the alleged ULP within moments of the January 2010 assault. On April 3, 2009, Drake knew that he had been approached by a local union representative regarding Drake's status as a non-union worker, and that the encounter had been less than cordial, causing Drake to report the matter to his supervisor. He further testified in his deposition that within a week of the work site encounter (around April 10th to the 17th), he learned that Richerson often acted like a bully in the union hall, that Richerson patted his gun holster whenever he had a disagreement with anyone, and that Richerson had allegedly threatened to shoot Drake. (Doc. No. 39 at 889-893.) According to Drake, Local 894 should have been aware of Richerson's violent tendencies, and it is these facts, along with the subsequent assault, that give rise to his ULP claim.[7] Of course, in January 2010, when Richerson referenced the men's previous encounter and then commenced his brutal assault, Drake was certainly alerted to Local 894's alleged failure to curb or rein in its hot-tempered official.

---

[7] Specifically, when Drake was asked what evidence showed Local 894's role in the assault, Drake identified "Just the stuff I heard about him in the union hall, that he was a bully; and they should have recognized it. And on April 3rd, when he had the incident with me, no one stopped it or did anything against him. They should have had something against him to stop him from doing it in the first place on January 9th." (Doc. No. 39 at 889.) While this testimony was offered in response to a question regarding his state law negligent hire/retention claim, plaintiffs point to no other facts that support the allegation in the amended complaint that Local 894 participated in an unfair labor practice by "encouraging, authorizing and allowing" Richerson to use coercion to pressure Drake into joining the union. (*See* Doc. No. 1-20 ¶ 25.)

Plaintiffs urge the Court to find that that the relevant limitations period is lengthened by the "continuing nature of violations[.]" (Doc. No. 41 at 959.) Plaintiffs correctly observe that, "where unfair practices are continuing in nature, the statutory period will be extended beyond the six-month timeframe." (Doc. No. 41 at 959-60 [citing cases].) *See Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994) (it is well settled that the continuing violation doctrine may be applied to extend a limitations period "upon a finding that the initial actionable injury continued beyond the expiration of the limitations period"); *see also Bowerman v. Int'l Union*, 646 F.3d 360, 366 (6th Cir. 2011) ("When a continuing violation is found, a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the [wrongful] policy or practice, including those that would otherwise be time barred.") (internal quotation and citation omitted). However, plaintiffs offer no explanation as to how the events of April 3, 2009 and January 9, 2010 are part of continuing conduct, and, in any event, fail to identify any facts that would support a finding of a continuing violation beyond January 9, 2010.

A brief review of the cases upon which plaintiffs rely underscores the fact that the present case does not fall within the confines of the continuing violation doctrine. In *Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368 (7th Cir. 1984), the court applied the doctrine because the union had repeatedly refused to refer the plaintiff for job assignments, and had, therefore, engaged in a continuing course of conduct. 750 F.2d at 1379. Similarly, in *Roberts v. N. Am. Rockwell Corp.*, 650 F.2d 823, the court found that an employer's refusal to hire the plaintiff constituted a continuing violation because, in denying employment to plaintiff, the employer was simply perpetuating its on-going policy of refusing to hire women. 650 F.2d at 827. In contrast,

10

the Sixth Circuit refused to find a continuing violation in *Noble*, where the union had failed to process the plaintiff's grievance, and the decision to abandon the grievance occurred outside the six-month period. In rejecting the plaintiff's argument that the union's continued inactivity with respect to the grievance constituted a continuing violation, the court emphasized that the on-going inactivity on the grievance was not an unfair labor practice on its own, but rather only became "cloaked with illegality" by reference to the initial decision to abandon the grievance. *Noble*, 32 F.3d at 1001-02 (citing, among other authorities, *Metz v. Tootsie Roll Indus.*, 715 F.2d 299 (7th Cir. 1983), *cert. denied*, 464 U.S. 1070 (1984)). In other words, the court in *Noble* found that the union's continued failure to undo an alleged ULP that occurred outside the limitations period could not save the time-barred claim. Plaintiffs have not alleged, nor have they pointed to any evidence in the record that would suggest, that the discrete events on April 3, 2009 and January 9, 2010 were part of an on-going policy adopted by Local 894 to coerce individuals into joining the union. Nor do they suggest that any action or inaction within six months of the filing of the claim is in and of itself an unfair labor practice such that the earlier assault can be said to "shed light on the true character of matters occurring within the limitations period[.]"[8] *Mets*, 715 F.2d at 305; *see Noble*, 32 F.3d at 1001.

---

[8] While *Lewis* and *Roberts* are factually dissimilar to the present case, subsequent courts have also called into question the legal value of each decision. In *Bowerman*, the court observed that the decision in *Lewis* predated the Supreme Court's decision in *AMTRAK v. Morgan*, 536 U.S. 101 (2002), which imposed the "discrete acts" rule discussed *supra*. *See Bowerman*, 646 F.3d at 367. Also, the Sixth Circuit has "subsequently limited *Roberts*, interpreting the continuous violation doctrine to require that a plaintiff prove some specific discriminatory act within the limitations period, not merely the existence of a continuing violation." *Wellons v. Northwest Airlines*, 25 F. App'x 214, 219 (6th Cir. 2001) (citing *Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir. 1991)).

The Court finds further guidance in the recent decision in *Bowerman*. There, the Sixth Circuit addressed the applicability of the continuing violation doctrine, with respect to § 10(b)'s six-month limitations period. Before the court was the question of whether claims involving lines of demarcation—what skilled trades would perform various functions—that were published more than six months before the action was filed were time-barred. The court concluded that the claims were untimely. In so ruling, the court reasoned that the discrete acts of which the plaintiffs were immediately aware when they occurred did not demonstrate wrongful past activity that continued into the present. Because each prior decision was individually actionable, such that there was no barrier to seeking immediate action on each claim, they did not constitute a continuing violation. Similarly here, the discrete acts occurring on April 3, 2009 and January 9, 2010 were immediately actionable as alleged coercive attempts to compel union membership, and, therefore, cannot be used to show a continuing violation.[9] Therefore, plaintiffs have failed to demonstrate that there are genuine issues of material fact regarding the existence of a continuing violation, such that the six-month limitations period should be extended.

Ultimately here, the latest date Drake should have known of Local 894's alleged encouragement, authorization or approval of Richerson's violent conduct was January 9, 2010, the date of the assault. It is undisputed that by that time, Drake was aware of Richerson's connection to the union, and Local 894's alleged knowledge of Richerson's proclivity for violence. However, the present action was not filed until January 6, 2011 and the ULP claim was not brought until August 9, 2011, both dates

---

[9] This is especially true of the January 9, 2010 incident, inasmuch as Drake was aware, by this time, of facts that allegedly tied Local 894 to the assault.

being well outside the six-month limitations period. Drake suggests that the January 9, 2010 assault does not establish, as a matter of law, that the "attack served as notice of the union connection." (Doc. No. 41 at 959.) This may be true, but Drake certainly knew all the facts necessary to demonstrate a union connection on January 6, 2011, when he filed his initial complaint and alleged that Local 894 "negligently, recklessly, or intentionally participated in or actually authorized" the January 9, 2010 assault. (*See* Doc. No. 1-1 ¶¶ 4, 7.) Though his ULP claim would have been time-barred, even if he had included it in the original complaint, it was all the more untimely when it was finally raised—seven months later and nineteen months after the fact—in the amended complaint. While defendants bear the burden of establishing that Drake was aware of the existence of a potentially actionable ULP, Drake's own testimony shows that he had all the facts necessary for a reasonable person to discern the possibility of the existence of an unfair labor practice immediately after the assault.[10] Therefore, the ULP claim is time-barred, and Local 894 is entitled to dismissal of this claim.

### IV. THE COURT WILL NOT EXERCISE SUPPLEMENTAL JURISDICTION

The remaining counts in the amended complaint involve state-law tort claims, and the decision as to whether to exercise supplemental jurisdiction over state law claims that derive from the same nucleus of operative facts as the dismissed federal claim is left to the discretion of the trial court. 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see Pinney Dock & Transp. Co. v. Penn. Cent. Corp.*,

---

[10] Moreover, plaintiffs have failed to identify any facts Drake only discovered, with reasonable diligence, after the expiration of the statutory period that were necessary for him to connect Local 894 to the assault. Faced with a well-supported summary judgment motion, plaintiffs bore the burden of at least demonstrating the existence of genuine issues of material fact as to the issue of timeliness. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322.

196 F.3d 617, 620 (6th Cir. 1999) ("[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction[.]") (internal quotation and citation omitted). In exercising this discretion, the court must look to "considerations of judicial economy, convenience and fairness to the litigants" and avoid needless decisions of state law. *Gibbs*, 383 U.S. at 726; *see Pinney Dock*, 196 F.3d at 620-21; *see also* C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567.1 (2d ed. 1984). Because disposition of the state-law tort claims will require multiple rulings applying state law, this Court, on its own motion, shall remand the remaining counts to state court. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("a federal court that has dismissed a plaintiff's federal claims should not ordinarily reach the plaintiff's state-law claims"), *cert. denied*, 549 U.S. 1279 (2007); *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004) ("when all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed"); *see, e.g., Goines v. Ajax Metal Processing, Inc.*, 984 F. Supp. 1057, 1065-66 (E.D. Mich. 1997) (district court, upon its own motion, remanded tortuous interference claim to state court following summary dismissal of time-barred non-hybrid ULP claim).

V. **CONCLUSION**

For all of the foregoing reasons, Local 894's motion for summary judgment is granted, in part. Plaintiffs' unfair labor practices claim is dismissed with prejudice, and the remaining state law claims are remanded to the Summit County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: May 31, 2013

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

V. **CONCLUSION**

For all of the foregoing reasons, Local 894's motion for summary judgment is granted, in part. Plaintiffs' unfair labor practices claim is dismissed with prejudice, and the remaining state law claims are remanded to the Summit County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: May 31, 2013

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

15

V. **CONCLUSION**

For all of the foregoing reasons, Local 894's motion for summary judgment is granted, in part. Plaintiffs' unfair labor practices claim is dismissed with prejudice, and the remaining state law claims are remanded to the Summit County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: May 31, 2013

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**